IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03117-REB-CBS

NATHAN JERARD DUNLAP,
     Plaintiff,
v.

RICK RAEMISCH, in his individual and official capacities as Executive Director of the Colorado Department of Corrections,
MARK FLOWERS, in his individual and official capacities as Director of Prisons of the Colorado Department of Corrections,
TONY CAROCHI, in his individual and official capacities as Director of Prisons of the Colorado Department of Corrections,
LOU ARCHULETA, in his individual and official capacities as Director of Prisons of the Colorado Department of Corrections,
KEVIN MILYARD, in his individual and official capacities as Deputy Director of Prisons of the Colorado Department of Corrections,
JAMES FALK, in his individual and official capacities as Warden of the Sterling Correctional Facility,
LARRY REID, in his individual and official capacities as Deputy Director of Prisons of the Colorado Department of Corrections,
DONNA SIMS, in her individual and official capacities as Review Committee Member for the Colorado Department of Corrections,
J[EREMIAH] CONE, in his individual and official capacities as Approving Housing Supervisor of the Sterling Correctional Facility,
JOHN CRUSSELL, in his individual and official capacities as Review Committee Member for the Colorado Department of Corrections,
MICHELLE NYCZ-HALLIGAN, in her individual and official capacities as Review Committee member for the Colorado Department of Corrections,
DAVE SCHERBARTH, in his individual and official capacities as Appointing Authority for the Colorado Department of Corrections,
JEFF PE[T]ERSON, in his individual and official capacities as Review Committee Member for the Colorado Department of Corrections,
[MICHELE] WINGERT, in her individual and official capacities as Review Committee Member for the Colorado Department of Corrections,
[SCOTT] STURGEON, in his individual and official capacities as Review Committee Member of the Colorado Department of Corrections, and
RYAN LONG, in his individual and official capacities as Review Committee Member for the Colorado Department of Corrections,
     Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) the Motion to Dismiss filed by Defendants Raemisch, Carochi, Archuleta, Falk, Reid, Sims, Cone, Crussell, Nycz-Halligan, Scherbarth, Petersen, Wingert, Sturgeon, and Long on March 13, 2014 (Doc. # 37), (2) the Motion to Dismiss filed by Defendant Flowers on March 17, 2014 (Doc. # 40), and (3) the Motion to Dismiss filed by Defendant Milyard on April 16, 2014 (Doc. # 47).   Pursuant to the Order Referring Case dated January 15, 2014 (Doc. # 14) and the memoranda dated March 14, 2014 (Doc. # 38), March 18, 2014 (Doc. # 41), and April 17, 2014 (Doc. # 48), these matters were referred to the Magistrate Judge.   The court has reviewed the Motions, Mr. Dunlap's Responses (filed April 11, 2014 (Doc. # 46) and April 29, 2014 (Doc. # 50)), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

Plaintiff, Nathan Dunlap, was convicted and sentenced to death in 1996 for committing four murders in 1993 in Aurora, Colorado.   For additional crimes, he was also sentenced to confinement in the Colorado Department of Corrections ("CDOC") for consecutive terms totaling 113 years.   *See People v. Dunlap*, 975 P.2d 723, 734-35 (Colo. 1999) (ruling on direct appeal of death sentence) (*en banc*).   Mr. Dunlap filed his initial Prisoner Complaint on or about November 14, 2013.   (*See* Doc. # 3).   At the court's direction, he filed his Amended Prisoner Complaint ("AC") on December 24, 2013.   (*See* Docs. # 5, # 8, # 9).

Mr. Dunlap brings his AC pursuant to Title 42 U.S.C. §1983, which creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person

. . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  (*See* Doc. # 9 at 8 of 30).   He alleges one claim for relief for violation of his Fourteenth Amendment right to due process.   (*See id.* at 19 of 30).

Mr. Dunlap alleges that because the CDOC does not have a "death row," he is confined in administrative segregation ("AdSeg").   (See Doc. # 9 at 8 of 30).   The Privilege Level Program ("PLP"),is "[a]n incentive based program based on behavior and program participation consisting of levels I through IV while in Administrative Segregation."   (See CDOC Administrative Regulation ("AR") No. 650-03 III. T.).   Level I has the most restrictive conditions, and each successive level offers the inmate more privileges.   "Offenders with a death penalty sentence will be assigned Administrative Segregation status and will enter administrative segregation status at Level II."   (See AR 650-03 IV. A.1. b.).[1]   Mr. Dunlap attained Level III of the QLLP, later the PLP, on December 4, 2002. [2]   (See Doc. # 9 at 18 of 30).   He alleges that he "has never been allowed to progress through the PLP past level 3" or receive most of the privileges available on the PLP levels that are higher than 3 . . . ."   (*See id.*).   He alleges that every review he has received since May 2012 has been "perfunctory, repetitive, and nothing more than a sham or pretext" that fails "to provide any meaningful review process that helps [him] progress through the PLP."   (*See* Doc. # 9 at 18-19 of 30).   Mr. Dunlap seeks declaratory and injunctive relief in the nature of "a meaningful review of his continued placement in extreme conditions that result in an atypical and significant hardship."   (*See* Doc. # 9 at 23 of 30).   He also seeks nominal damages, attorney fees, and costs.   (*See id.*).

---

[1]      The court may take judicial notice of the CDOC's administrative regulations.   *See City of Wichita, Kan. v. United States Gypsum Co.*, 72 F.3d 1491, 1496 (10th Cir.1996) (finding administrative regulations subject to judicial notice);   *Ray v. Aztec Well Service Co.* , 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations);   *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir.1979) (judicial notice taken of Bureau of Prisons' Program Statement).

[2]      The PLP succeeded the Quality of Life Level Program ("QLLP").

II.     Standard of Review

Defendants move to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

a claim upon which relief can be granted and Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.[3]   To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain

enough allegations of fact "to state a claim to relief that is plausible on its face."   *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The burden is on the plaintiff to frame "a complaint

with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.

*Twombly*, 550 U.S. at 556.

Because Mr. Dunlap appears *pro se*, the court "review[s] his pleadings and other papers

liberally and hold[s] them to a less stringent standard than those drafted by attorneys."   *Trackwell*

*v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).   *See also Haines*

*v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent

standards than formal pleadings drafted by lawyers").   However, a *pro se* litigant's "conclusory

allegations without supporting factual averments are insufficient to state a claim upon which relief

can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).   A court may not assume

that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in

---

[3]      Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."   Defendants' assertion of Eleventh Amendment immunity in their official capacities against a claim for money damages constitutes a challenge to the allegations of subject matter in the AC.   Since the filing of the Motions to Dismiss, Mr. Dunlap has clarified that he does not seek money damages from Defendants in their official capacities, thus mooting Defendants' assertion of Eleventh Amendment immunity under Fed. R. Civ. P. 12(b)(1).
        The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against state officials.   *Kentucky v. Graham*, 473 U.S. 159, 164 (1985).   *See also Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official);   *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted).

ways that a plaintiff has not alleged.   *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");   *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

A.   Statute of Limitations

Before June 13, 2011, Mr. Dunlap he was confined in AdSeg at the Colorado State Penitentiary ("CSP") of the CDOC.   On June 13, 2011, he was transferred to AdSeg at the Sterling Correctional Facility ("SCF").   Defendants argue that Mr. Dunlap's claim as it relates to his confinement in AdSeg at CSP prior to June 13, 2011 is barred by the statute of limitations. The statute of limitations applicable to claims brought pursuant to § 1983 is two years.   *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided");   *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to § 1983 claim).   "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action."   *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).   *See also Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action.")   The portion of Mr. Dunlap's claim that arises from events that he alleges

5

occurred prior to June 13, 2011 appears to be barred by the two-year statute of limitations.   Since

the filing of the Motions, Mr. Dunlap has clarified that he is not asserting "any claim relating to his

confinement while at" the CSP, thus rendering moot Defendants' statute of limitations argument.


B.     Due Process Claim

        Mr. Dunlap alleges deprivation of his liberty interest without due process in violation of the

Fourteenth Amendment based on his continued placement in AdSeg without "meaningful review."

(*See* Doc. # 9 at 19 of 30).   He does not challenge his placement in AdSeg or the conditions of

confinement in AdSeg.   (*See* Doc. # 9 at 9 of 30, ¶¶ 8, 9).   Mr. Dunlap challenges "the denial of

his right to meaningful reviews that would enable him to progress . . .to incrementally better

conditions within adseg."   (See Doc. # 9 at 9, 17-10 of 30).

        The necessary predicate to a due process claim is a deprivation of a protected interest.

*See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every

due process challenge is whether the plaintiff has been deprived of a protected interest in

'property' or 'liberty.'") (citing U.S. Const., amend. XIV ("nor shall any State deprive any person of

life, liberty, or property, without due process of law")).   Prisoners do not have a constitutionally

recognized liberty interest in their security classification or placement.   *See Hewitt v. Helms*, 459

U.S. 460, 468 (1983) ("administrative segregation is the sort of confinement that inmates should

reasonably anticipate receiving at some point in their incarceration");   *Trujillo v. Williams*, 465

F.3d 1210, 1225 (10th Cir. 2006) ("classification of a plaintiff into segregation does not involve

deprivation of a liberty interest independently protected by the Due Process Clause") (quotation

and alterations omitted).

        However, in *Sandin v. Conner*, the Supreme Court held that administrative segregation

6

may implicate a liberty interest protected by the Due Process Clause if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," 515 U.S. at 484, or if it "will inevitably affect the duration of his sentence." *Id.* at 487.   *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484).   "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).   Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation creates a liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).   These factors are not necessarily dispositive.   "[T]he proper approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012).   "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or

micro-management from the federal courts."   *DiMarco*, 473 F.3d at 1342 (citation omitted).

First, the court may assume that Mr. Dunlap's confinement in AdSeg at the SCF relates to and furthers a legitimate penological interest.   *See Rezaq v. Nalley*, 677 F.3d 1001, 1014 (10th Cir. 2012) ("This court has upheld an inmate's placement in segregation, even for an extended period of time, for safety reasons.") (citing *Estate of DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007) (deferring to Wyoming prison's determination that "DiMarco might be a risk if introduced to the general population of the prison"));   *Scheanette v. Riggins*, No. Civ.A. 9:05CV34, 2006 WL 722212, at * 10 (March 15, 2006) *("inmates convicted of capital murder represent a significant risk to the security of the institution, and the segregation of such individuals, for the protection of staff, other inmates, and themselves, is reasonably related to a legitimate penological purpose").* [4]

Second, the court considers whether the conditions of Mr. Dunlap's confinement are extreme.   The PLP has five "Privilege Levels," denominated I, II, III, IV A, and IV B.   (*See* AR 650-03 IV.H. (Doc. # 37-1 at 8 of 25)).   Level II is the "initial entry level placement for all offenders into administrative segregation."   (*See* AR 650-03 IV.H.2. (Doc. # 37-1 at 9-10 of 25)).   Level III, at which Mr. Dunlap has been classified since 2002, "is for offenders who have demonstrated appropriate behavioral and level compliance, demonstrated proper interaction with staff and other offenders and maintained suitable cell compliance."   (*See* AR 650-03 IV.H.3. (Doc. # 37-1 at 10-11 of 25)).   Level IV A, also called "Cognitive Programming," is designed as a transition level between administrative segregation and general population.   (*See* AR 650-03 IV.H.4. (Doc. # 37-1 at 11-12 of 25).   Level IV B is for offenders who have completed the first three levels but who continue to pose a substantial security risk if they were returned to general population.   (*See* AR

---

[4]     Copies of unpublished cases cited are attached to this Recommendation.

650-03 IV.H.5. (Doc. # 37-1 at 12-13 of 25)).   Progress through the Privilege Levels is estimated

"typically" to take a minimum of nine months.   (*See* AR 650-03 IV.G.1. (Doc. # 37-1 at 7 of 25)).

At Level III, Mr. Dunlap is allowed certain privileges.   (*See* AR 650-03 IV.H.3.d. (Doc. #

37-1 at 10-11 of 25)).   He alleges that "death sentenced prisoners can have the same canteen

privileges as those that are available to prisoners" at Level IV.B.   (*See* Doc. # 9 at 15, 29 of 30).

Mr. Dunlap alleges that his cell "is approximately 80 square feet of floor space," that he "is

confined there for about 23 to 24 hours per day," and that he eats all meals alone in the cell.   (*See*

Doc. # 9 at 10-11 of 30).   His cell has "two windows exposed to the outside that are

approximately 38 inches wide and six inches tall."   (*See* Doc. # 9 at 10 of 30).   The lights are

dimmed between 10:00 p.m. and 6:00 a.m..   (*See* Doc. # 9 at 10 of 30).   He "is allowed one hour

a day five days a week, out of the cell he resides in to be used to spend time in a recreation area

by himself" and "[h]e is allowed to shower on the same days he is allowed to use the recreation

area."   (*See* Doc. # 9 at 11 of 30).

The AC does not state facts equating to the sort of extreme conditions where courts have

found the test of *Sandin* met.   In *Rezaq*, the Tenth Circuit panel concluded that conditions at the

federal supermax facility in Florence, Colorado (ADX) were not so extreme as to create a liberty

interest.   677 F.3d at 1014-15.   While the conditions there were harsh, including 23 hours a day

in a small cell and all meals alone in the cell, inmates had "the opportunity for outdoor recreation .

. . alone in fenced-in areas slightly larger than their cells," "television that aired black-and-white

educational and religious programming," and "were permitted five 'no contact' social visits and two

fifteen-minute phone calls per month."   *Id.* at 1014-15.   The court concluded that the "conditions

at ADX are comparable to those routinely imposed in the administrative segregation setting" and

"are not extreme as a matter of law."   *Rezaq*, 677 F.3d at 1015 ("The conditions at ADX, like

those at the Ohio supermax prison in *Wilkinson*, do not, in and of themselves, give rise to a liberty interest because they are substantially similar to conditions experienced in any solitary confinement setting.") (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) ("Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities. . . .").

Shortly after *Rezaq*, the Tenth Circuit determined that a prisoner's due process rights were not violated by his placement in administrative segregation in the Kansas Department of Corrections.   *Stallings v. Werholtz*, 492 F. App'x 841, 845-46 (10th Cir. July 6, 2012).   The court decided that conditions were not extreme where the inmate was confined in a seventy square foot cell twenty-three hours a day, had limited time outside his cell each week and social visits were conducted via videoconferencing.   *Id.*   More recently, the Tenth Circuit determined that conditions in long-term administrative segregation in the Wyoming Department of Corrections are not sufficiently extreme to create a liberty interest.   *McAdams v. Wyoming Department of Corrections*, 561 F. App'x 718, 721-22 (10th Cir. April 9, 2014).   "The conditions of LSAT are not pleasant."   *Id.*   "McAdams is confined to his cell for twenty-three hours a day; he is limited to one hour of recreation five days a week and three showers a week; the property he is allowed to keep in his cell is restricted; his visits are non-contact; and the lights are on twenty-four hours a day."   *McAdams*, 561 F. App'x at 721-22.   "But these conditions are not extreme."   *Id.* (citing *Rezaq*, 677 F.3d at 1014–15).   *See also Denson v. Maifeld*, No. 09-cv-02087-WYD-KLM, 2012 WL 4356216, at ** 3, 8 (D. Colo. Sept. 24, 2012) (conditions did not support a finding of a protected liberty interest where plaintiff was placed in a cell approximately eight feet by ten feet, to which he was confined for twenty-three hours per day, with only one hour allotted for exercise five days a week, the lights in his cell remained on for twenty-four hours per day, he was afforded limited

contact with other inmates and prison personnel, and administrative segregation had no definite timeline for release).   The court concludes that, as a matter of law, the conditions alleged by Mr. Dunlap are not sufficiently extreme to implicate a liberty interest.

As for the third *DiMarco* factor, there is no allegation that serving time in AdSeg will lengthen Mr. Dunlap's period of confinement.   The first, second, and third *DiMarco* factors thus weigh against the finding of a liberty interest.

The fourth *DiMarco* factor addresses whether placement in administrative segregation was indefinite.   Mr. Dunlap alleges that he is being denied his right to a meaningful periodic review of his status.   He alleges that he has been at Level III for over twelve years and "has never been allowed to progress . . . ."   (See Doc. # 9 at 18 of 30).   He alleges that the review process is a "sham or pretext" that allows prison officials to keep him confined without progression indefinitely. (*See id.*).

"[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates."   *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012) (internal quotation marks and citation omitted).   "[T]he review must be meaningful; it cannot be a sham or pretext."   *Id.*   "[A] 'meaningful' review for a prisoner in a behavior-modification program is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted."   *Toevs*, 685 F.3d 903, 912.   "In the context of a stratified incentive program such as the [PLP], the review would consider whether the prisoner is eligible to move to the next level."   *Id.*   "[T]he review should provide a statement of reasons, which will often serve as a guide for future behavior (*i.e.*, by giving the prisoner some idea of how he might progress toward a more favorable placement)."

*Id.*   In *Toevs*, the court held that the inmate had not received meaningful reviews.   685 F.3d at 914-15.   For example, he was not given meaningful information as to why he was being held at a certain level.   *Id.*

The CDOC's Administrative Regulations provide that "Administrative Segregation Status is designed to be a progressive management process that includes distinct levels (I, II, III, IV A and I V B). . . ."   (*See* AR 650-03 IV.G.1. (Doc. # 37-1 at 7 of 25)).   "Offenders are afforded the opportunity to progress through privilege levels . . . ."   *Id.*   "Some offenders may continue placement on administrative segregation status if indicated by behavior or risk.   Progression to general population is dependent on Appointing Authority/Deputy Director/Director Reviews."   *Id.* "Offenders with a death penalty sentence may progress through the privilege level system but will continue to be housed in a manner that is consistent with their continued risk and threat to the department."   (*See* AR 650-03 IV.G.3. (Doc. # 37-1 at 7-8 of 25)).   "The Director of Prisons will approve the management plan for these offenders."   *Id.*

The duration of Mr. Dunlap's placement at Level III AdSeg without any indication of a possibility to progress might be equivalent to indefinite placement.   Mr. Dunlap alleges that he did not receive meaningful reviews and the record at this stage does not indicate that he received meaningful reviews.   Considering the totality of the circumstances, as *Rezaq* instructs, the court concludes that based upon the indefiniteness of Mr. Dunlap's confinement in AdSeg, he may state a liberty interest worthy of constitutional protection in progressing to a less restrictive level.

The court acknowledges Defendants' argument that the *Toevs* opinion does not apply to Mr. Dunlap because the "opinion does not address situations such as placing an inmate in administrative segregation because his conviction is for raping a child, because he is a former law enforcement officer, or because he has raped or murdered other inmates and therefore presents

12

a risk to the safety of the institution."   685 F.3d at 912 n. 8.   *See also Payne v. Friel*, 919 F. Supp. 2d 1185, 1200 n. 7 (D. Utah 2013) ("Because Plaintiff is not in any type of behavior-modification program, but is being kept in ad-seg exclusively for security reasons, the *Toevs* standard is not applicable here.");   *Prieto v. Clarke*, No. 1:12cv1199 (LMB/IDD), 2013 WL 6019215, at * 11 (E.D. Va. Nov. 12, 2013) ("defendants could provide plaintiff with an individualized classification determination using procedures that are the same or substantially similar to the procedures used for all non-capital offenders" in order to comport with minimal due process requirements or could vary the basic conditions of confinement on death row, if only slightly, such that confinement there would no longer impose an atypical and significant hardship on plaintiff.").   The present record before the court does not indicate whether security reasons prevent Mr. Dunlap from progressing to a less restrictive level in AdSeg.

Defendants' arguments would be better raised on the sort of factual record that is prepared for summary judgment motions.   The court cannot find on the basis of the allegations in the AC and this record that Mr. Dunlap will inevitably fail to show he has a liberty interest or to state a plausible claim.

Accordingly, IT IS RECOMMENDED that the Motion to Dismiss filed by Defendants Raemisch, Carochi, Archuleta, Falk, Reid, Sims, Cone, Crussell, Nycz-Halligan, Scherbarth, Petersen, Wingert, Sturgeon, and Long on March 13, 2014 (Doc. # 37), the Motion to Dismiss filed by Defendant Flowers on March 17, 2014 (Doc. # 40), and the Motion to Dismiss filed by Defendant Milyard on April 16, 2014 (Doc. # 47) be denied.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);   *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);   *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 9th day of February, 2015.

BY THE COURT:


   s/ Craig B. Shaffer
United States Magistrate Judge